**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| BRUCE L. HILL,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC; and VERIZON COMMUNICATIONS, INC.,<br><br>Defendants. | Civil Action No. 3:23-cv-140 |

## COMPLAINT

Plaintiff Bruce L. Hill, by counsel, files this Complaint against Defendants Experian Information Solutions, Inc.; Equifax Information Services, LLC; Trans Union, LLC; and Verizon Communications, Inc. (collectively, "Defendants"). In support of his claims, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." (citations omitted)).

2.  The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3.  Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a reporting finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Almost ten years later, the situation was even worse: a 2021 study found that more than 34 percent of surveyed consumers were able to identify at least one error on their credit reports.[2]

4.  One issue that plagues consumers is a "mixed file," which occurs when a consumer reporting agency combines (or mixes) a consumer's file with that of another consumer who has similar identifying information. Another is identity theft.

5.  Often, it is difficult for consumers to determine whether they are the victim of a mixed file or identity theft because when they review their consumer disclosure, they only see inaccurate information that does not belong to them on their report.

6.  This is one such case. Plaintiff's credit reports contain several collection accounts that do not belong to him.

---

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

7. When Plaintiff disputed these accounts with Equifax, Experian, and Trans Union, each failed to adequately investigate his disputes or remove the inaccurate information from his reports.

8. As a result, Plaintiff alleges claims against Experian, Equifax, and Trans Union for: (1) violating the FCRA, §1681e(b), by failing to reasonably ensure the maximum possible accuracy of his credit reports, and (2) violating the FCRA, §1681i, by failing to fully investigate Plaintiff's disputes.

9. Plaintiff also alleges claims against Verizon for violating the FCRA, § 1681s-2(b)(1), by failing to properly investigate his disputes and to review all relevant information provided by the consumer reporting agencies.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 168lp, and 15 U.S.C. § 1692k(d).

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District as Plaintiff resides in this District.

## PARTIES

12. Plaintiff is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

13. Experian is a foreign corporation authorized to do business in Virginia through its registered offices in Richmond. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

14. Equifax is a foreign limited liability company authorized to do business in Virginia through its registered offices in Richmond. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

15. Trans Union is a foreign limited liability company authorized to do business in Virginia through its registered offices in Richmond. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

16. Verizon is a foreign corporation authorized to do business in Virginia through its registered offices in Richmond. It is a "furnisher" as governed by the FCRA.

## FACTS

17. For nearly two years, Plaintiff has been plagued by inaccurate credit reporting, including collection items that do not belong to him.

18. Because of this, he has had a fraud alert placed on his credit reports to prevent someone from taking out new credit in his name.

19. Yet, despite his fraud alert, collection items that do not belong to him continually get placed on his credit reports.

20. Upon information and belief, these inaccuracies are the result of a mixed file. In the alternative, Plaintiff is the victim of identity theft.

21. In September 2022, Plaintiff learned that Verizon was reporting him as past due in the amount of $903.00. Plaintiff did not incur that debt and did not have an account relationship with Verizon at that time.

22. After calling Verizon, Plaintiff discovered that the Verizon account was somehow associated with an address in Elizabeth, New Jersey. It was purportedly opened using a social security number different than Plaintiff's, which precluded Plaintiff from learning more about the account from Verizon.

4

23. Plaintiff subsequently learned that his credit reports also showed a debt owed to IC Systems, LLC in the amount of $782.36. That debt purportedly stemmed from an account with Charter Communications under its Spectrum brand. Plaintiff did not open that account or incur that debt. IC Systems advised Plaintiff that the debt was associated with an address in Texas.

24. Plaintiff did not and had never resided in New Jersey or Texas.  To be sure, Plaintiff has lived in Virginia for over 30 years.

25. In or around October 2022, Plaintiff disputed the unfamiliar accounts and addresses online, with each Experian, Equifax, and Trans Union.

26. Upon information and belief, Experian, Equifax, and Trans Union each forwarded notification of Plaintiff's dispute to the furnishers, including Verizon.

27. Experian responded in writing, deleting an address in Laredo, Texas, but verifying the Verizon account as Plaintiff's.

28. Equifax and Trans Union did not respond to Plaintiff's online disputes.

29. In late November, hoping to take advantage of historically low interest rates, Plaintiff applied to Justice Federal Credit Union for a home equity line of credit. Plaintiff's application was denied.

30. His broker advised him the that he would have to pay the collection accounts that did not belong to him to qualify for a loan.

31. At the time of his application, Plaintiff learned that—despite his prior disputes—Experian, Equifax, and Trans Union each were still reporting the Verizon account, the IC Systems collections account (on behalf of Charter Communications), and the Elizabeth, New Jersey address.

32.  Equifax also was reporting a separate Charter Communications debt, which was in collections with Sunrise Credit Services.

33.  Plaintiff mailed dispute letters to Experian, Equifax, and Trans Union on or about December 2, 2022.

34.  Plaintiff's Experian letter explained that he did not open the account with Verizon and that he did owe $903. Plaintiff confirmed that he did not live in Elizabeth, New Jersey. Plaintiff further made clear that he did not open a Charter Communications account and that he did not owe $782.  Plaintiff specifically asked Experian to look into the social security numbers and addresses used to open those disputed accounts.

35.  Upon information and belief, Experian forwarded notification of Plaintiff's dispute to the furnishers, including Verizon.

36.  Plaintiff's Equifax letter explained that he did not open the account with Verizon and that he did owe $903. Plaintiff confirmed that he did not live in Elizabeth, New Jersey. Plaintiff also stated that he did not open a Charter Communications account and that he did not owe $782. Further, Plaintiff disputed the Sunrise Credit Services account, noting that he also did not open that Charter Communications account. Plaintiff specifically asked Equifax to consider the social security numbers and addresses used to open the disputed accounts.

37.  Upon information and belief, Equifax forwarded notification of Plaintiff's dispute to the furnishers, including Verizon.

38.  Plaintiff's Trans Union letter explained that he did not open the account with Verizon and that he did owe $903. Plaintiff confirmed that he did not live in Elizabeth, New Jersey. Plaintiff further made clear that he did not open a Charter Communications account, that he did not owe $782, and that he had disputed as much with IC Systems directly.  Plaintiff specifically

asked Trans Union to look into the social security numbers and addresses used to open the disputed accounts.

39. Upon information and belief, Trans Union forwarded notification of Plaintiff's dispute to the furnishers, including Verizon.

40. On or about December 15, 2022, Trans Union responded to Plaintiff's dispute, noting that it had deleted the IC Systems and Verizon accounts.

41. On or about December 24, 2022, Experian responded to Plaintiff's dispute, noting that it had deleted the IC Systems account. Experian, however, verified the Verizon account. Correspondingly, Experian continued to report Plaintiff as having an Elizabeth, New Jersey address.

42. Equifax did not respond to Plaintiff's dispute.

43. As a result of Defendants' conduct, Plaintiff has suffered significant actual damages, including a decreased credit score, credit denials, and emotional distress.

### *Defendants' FCRA Violations Were Willful*

44. Experian, Equifax, and Trans Union have substantial notice and knowledge of the "mixed file" problems and failures of their business procedures and systems.

45. As early as 1992, enforcement action was brought against Experian [formerly TRW, Inc.] in 1991 and 1992 and resulted in consent orders where Experian agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. *See TRW, Inc. v. Morales*, Civ. Action No. 3-91-1340-H (N.D. Tex. 1991); *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Tex. 1991).

46. Then, in 2015, the New York Attorney General was forced to sue Experian, Equifax, and Trans Union because of their conduct in mixing consumer credit files. As part of the

settlement, Defendants agreed to implement procedures to ensure accurate reporting. https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf

47. Shortly after, the lawsuit resulted in an Agreement of Assurances between Experian, Equifax, Trans Union, and several Attorneys General relating to the Defendants' responsibilities to prevent mixed files. Experian, Equifax, and Trans Union entered into an "Assurance of Voluntary Compliance" to ensure that it would implement changes. http://www.myfloridalegal.com/EC_Edoc.nsf/0/3D93314A8135213B85257E5B00611557/%24file/Equifax+Experian+TransUnion+05-20-2015.pdf

48. Despite this extensive notice, Experian's, Equifax's, and Trans Union's computer systems still cause mixed files because they do not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. Experian, Equifax, and Trans Union do this to sell more credit reports.

49. Despite their recognition of the mixed file problem, Experian, Equifax, and Trans Union knowingly choose to ignore the mixed-file problem, even though they already possess a simple, easy, and inexpensive means to correct and avoid the problem.

50. Moreover, Experian, Equifax, Trans Union, and their competitors have been sued repeatedly for failing to prevent mixed consumer files. *See, e.g.*, *Miller v. Equifax Info. Servs., LLC*, No. 3:11-cv-1231 (D. Or. 2011) (jury verdict of $18.6 million); *Malverty v. Equifax Info. Servs. LLC*, No. 8:17-cv-1617 (M.D. Fla. 2017); *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. Trans Union Corp.*, Civ. No. 97-4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *Thomas v. Trans Union*, C.A. No. 00-1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. Trans Union* (E.D. Cal.) ($990,000 verdict); *Price v. Trans Union, LLC*,

737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. Trans Union, LLC*, Civ. No. 3:11cv1317 (D. Conn. Aug. 17, 2011); *Calderon v. Experian Info. Sols, Inc.*, 2012 U.S. Dist. LEXIS 89375, *10 (D. Idaho 2012); *Howley v. Experian Info. Sols., Inc.*, Civ. No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Sols., Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v. Experian Info. Sols., Inc.*, 782 F. Supp. 2d 617 (N.D. Ill. 2011); *Comeaux v. Experian Info. Sols.*, 2004 U.S. Dist. LEXIS 10705, *20 (E.D. Tex. 2004); *Cartwright v. Experian*, Civ. No. CV 09-427 (C.D. Cal. 2009); *Campbell v. Experian Info. Sols., Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen v. Experian Info. Sols., Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001); *Williams v. Equifax Info. Servs.*, LLC, No. 48-2003-CA-9035-O (Orange County 2007).

51. Despite these lawsuits and enforcement actions, Experian, Equifax, and Trans Union have not altered their procedures to ensure that the credit reports that they prepare, publish, and maintain are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

52. Upon information and belief, Experian, Equifax, and Trans Union have not, and do not intend, to modify their procedures to comply with this section of the FCRA because compliance would drastically increase their operating expenses.

53. As a standard practice, Experian, Equifax, and Trans Union also do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite several court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover*

*Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

54. Upon information and belief and consistent with their standard policies and procedures, Experian, Equifax, and Trans Union automatically generated their "investigation" results once Verizon and the other furnishers verified the status of the mixed accounts, and they did not take any additional actions to verify the accuracy of the information that the furnishers provided.

55. Instead, Experian, Equifax, and Trans Union blindly accepted the furnishers' version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

56. Experian, Equifax, and Trans Union continue the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

57. Experian, Equifax, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

58. As a result, at all times relevant to this Complaint, Experian's, Equifax's, and Trans Union's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, their conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

59. Verizon's processing of consumer disputes was also willful and carried out in reckless disregard for consumers' rights under the FCRA. For example, Verizon's conduct was willful because it was intentionally accomplished through intended procedures that prioritize efficiency over accuracy.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
## (EXPERIAN, EQUIFAX, and TRANS UNION)

60. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

61. Experian, Equifax, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained.

62. Because of Experian's, Equifax's, and Trans Union's conduct, Plaintiff suffered actual damages, including, without limitation, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

63. Experian's, Equifax's, and Trans Union's conduct in violating § 1681e(b) was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n. In the alternative, they were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i
## (EXPERIAN, EQUIFAX, and TRANS UNION)

64. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

65. Experian, Equifax, and Trans Union violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the

disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide the furnishers, including Verizon, with all the relevant information about Plaintiff's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

66. Because of Experian's, Equifax's, and Trans Union's violations of §1681i, Plaintiff suffered actual damages, including, but not limited to, loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

67. Experian's, Equifax's, and Trans Union's violations of § 1681i were willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n. In the alternative, Experian, Equifax, and Trans Union were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)**
**(VERIZON)**

68. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

69. On one or more occasion within the past two years, by example only and without limitation, Verizon violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to properly investigate Plaintiff's disputes.

70. When Plaintiff disputed the account with Experian, Verizon used a dispute system named, "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher-customers such as Verizon. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systemic and uniform.

71. When the credit bureaus receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

72. Upon information and belief, the ACDV form is the way Verizon has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

73. Upon information and belief, Plaintiff alleges that Experian, Equifax, and Trans Union forwarded Plaintiff's disputes via an ACDV to Verizon.

74. Verizon understood the nature of Plaintiff's disputes when it received the ACDV forms.

75. Upon information and belief, when Verizon received the ACDV forms containing Plaintiff's disputes, Verizon followed a standard and systemically unlawful process where it only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

76. Upon information and belief, when Verizon receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is itself accurate.

77. Because of Verizon's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered actual damages, including, but not limited to, loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

78. Verizon's conduct in violating § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages under 15 U.S.C. § 1681n. In the alternative, Verizon was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

79. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Verizon under 15 U.S.C. §§ 1681n and 1681o.

## COUNT FOUR:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
## (VERIZON)

80. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

81. On one or more occasions within the past two years, by example only and without limitation, Verizon violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit bureaus.

82. As Plaintiff detailed in the previous Count, Verizon has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

83. Verizon was aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

84. Verizon does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

85. Verizon understood Plaintiff's disputes and that Plaintiff claimed that the information was inaccurate.

86. Because of Verizon's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Plaintiff suffered actual damages, including, but not limited to, loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

87. Verizon's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages under 15 U.S.C. § 1681n. In the alternative, Verizon was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

88. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Verizon under 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**BRUCE L. HILL**

By:  */s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com

*Counsel for Plaintiff*